Good morning, Your Honors, and may it please the Court, Robert Burke, D.E.R.K.E. for the petitioner Celia Benavidez. If it's amenable to the Court, I would like to reserve two minutes for rebuttal should it be necessary. Certainly, Counselor. Thank you, Your Honor. Please proceed. Thank you very much, Your Honor. Your Honor, I think the jump out from this case in reviewing and preparing for oral argument is that this Court's decision in Maluli, the recent Supreme Court decision dealing with paraphernalia, the government in its opposition raised two points. One was due diligence. The other was prejudice. And I think the issue of prejudice may be, to some degree, dispensed with because of Maluli, but for Salviejo. So in Salviejo, this Court held that where you have a crime relating to a controlled substance that's generally related to the drug trade, you have a crime relating to a controlled substance. Versus in Maluli, where the Supreme Court said, no, we still have to have some direct referent to a drug that's scheduled on a Federal Controlled Substances Act schedule. And here, we're dealing with a statute, the maintaining of a place in which numerous categories of narcotics are involved in the statute. None of them are specified in the record of conviction. And it couldn't be told from the record of a drug that's scheduled under the Federal Controlled Substances Act. You know, before you get into that, there's like a foundational question first. In deciding the issue in this case, which is prejudice, do we decide it on the basis of the law as of the time the motion to reopen was decided or the law today? In other words, is the board supposed to anticipate that the Supreme Court can decide this case several years later? No, but I do think that we're... And what's the relevance of this case to the motion to reopen? Where the Supreme Court has said the analytical framework that's occurred before this may be wrong, then I do think it is appropriate for the court to revisit the analytical framework under which it came. But isn't the BIA entitled to treat the case it relied on as binding in the Ninth Circuit? They absolutely... At the time they decided the motion to reopen? They absolutely are, Your Honor. However, what I preserved in front of the board really went to the same issue. I was arguing to the board, look, I think there's an issue with Salviejo. I think there's an issue because there is no substance identified in the act. Now, obviously the board is bound by the Ninth Circuit, so I have to get that case to the Ninth Circuit before I can even have that issue heard or considered. And honestly, I didn't even have to exhaust it before the board because it would have been a futility at the board. However, the case is live on direct appeal with that issue still reserved before this court. So it might not be a question of did the board err because under the laws that existed at the time, it's conceivable that the board did not err. But then the board actually relied on a case, which I believe I can... I'm reluctant to say, but I think I can say it, that Malouly implicitly overrules, therefore saying the analytical framework that was applied going back to each court before it was flawed. Isn't that the same as saying that the board erred because it didn't anticipate Malouly? It is and it isn't, except you couldn't really say with a straight face that the board erred because the board was following this court's precedent. Now, if this court's precedent were to be modified based upon something that's transpiring while this case is still on direct appeal, then I do think that it would be within this board's purview to go back to the board and say, look, we've been told our analytical framework needed to be reverted and you relied on our analytical framework. In this case, that's live. This isn't coming up on a motion to reopen or years later. This is still a direct path. Well, you keep saying direct appeal, but I'm puzzled. This is not really a direct appeal. This is a motion to reopen. Oh, yeah? Oh, my God, have mercy. We're on cilia benevitis. This is a motion to reopen, Your Honor. You are correct. And I apologize for saying this is a direct appeal. Doesn't that make a difference? It may make a difference. However, even if it didn't make a difference, the fact is that my argument was in before the board that they shouldn't have found this to be a crime relating to a controlled substance, including the same argument that the Supreme Court just affirmed. So it may not be an issue of they were wrong when they decided it. However, I was right when I argued it. And now we're here in front of this court. And the question is, was Burke correct? Was it prejudicial? The fact that these appeals weren't preserved, was it prejudicial? They were. But I have an easier out than that, and I'm glad that I do. Because there were other issues that prior counsel failed to preserve. They were preserved in the immigration court. Then prior counsel missed the appellate brief, and they were raised again here in this court. And that is this whether the court erred in saying, look, you don't have to file your expungement now. You can wait until I rule. And that was explicit on the record, and the citations are in my brief. And then saying, well, you didn't file the expungement, so I'm not going to rule on that issue. So there were other issues that were ripe, even if at that time the board would have had to find, even if at that point the board would have had to find Salviejo controlling. So, but I can take an even more villainous way out of that, which is to say, the mere not filing of a brief is prejudicial. If there's something that could have been said in that brief that would have made a difference. If there's something that could have been said, and as I've mentioned, there's that initial argument that could have been said. But also, that would have preserved this issue that I'm arguing now, that Salviejo needs to be revisited. That issue would have been preserved all the way through. It was raised below. It was intended to be preserved. It was argued. Well, at a minimum, it needs to have been raised in the motion to reopen sufficiently so the BIA can say, yes, there's some argument here with traction such that petitioner, or in BIA's terms, the was prejudiced. I would like to answer that in a semi-arrogant way. And I think the argument that I raised before the board is very similar to the rationale that was eventually adopted by the Supreme Court in Malouli. The fact is... Going back to the first, not the expungement argument, but going back to the first controlled substance argument. Yes, Your Honor. And that is to say, had this transpired, had this transpired according to Hoyle without the intervening and effective assistance, that issue would have been preserved. It would have been argued before the board. And she would have lost years ago. So it may be the best thing that ever happened to her was not having a brief filed on time. I honestly don't know that that's true, Your Honor. I mean, but in terms of the timing, it's something that's that is raised in the opposition brief here. You want to save a minute for rebuttal? If I could just, yeah, I'm just going to briefly say and only say 45 seconds, Your Honor, and I'll I'm sorry, Your Honor, I forgot what I was going to say. Okay, save the rebuttal. Good morning, Your Honors. May it please the court, I am Blair O'Connor on behalf of the Board of Trustees, and I would like to request that the board not abuse its considerable discretion in denying Petitioner's motion to reopen, which was filed more than three and a half years after the filing deadline. I have two questions about this discussion that has occurred. First one is, explain to me how a C citation to Salviejo Fernandez is sufficient to take the position that the board relied on that theory rather than on the basic theory it had discussed. Secondly, even before you get to the Supreme Court case, isn't it correct that we had cases, Ruiz Vidal and Valdivinos Torres, which made it clear that you have to have a specific drug that's covered by the federal drugs, and the California statute covers more than that, and there's no identification of the specific drug in this case? Yes, Your Honor, to address them in turn, we believe the reason the board cited Salviejo is because the original argument the alien made was not that there's a problem with tying the controlled substance to a federally controlled substance, but the original argument was that the statute was overbroad because it allows for solicitation offenses. And that's why the board cited Salviejo, because this court in Salviejo said that this statute, 11366, categorically matches up to the federal statute regarding maintaining a drug house. Now, the reason we think the board did not go into the discussion regarding Ruiz Vidal is because at the time it had a precedential decision, Martinez-Espinoza, that said that it was not tied to federally controlled substance, because rather it relates to the drug trade in general. It had that precedential decision, it was a 2009 decision, and so basically the board would have said that that argument stops right there, it fails under Martinez- But it didn't make an argument, all it did was say, see the case. That's enough to make that the basis of its decision? You know, again, we would have been better off if they had maybe cited Martinez-Espinoza, but when they have a precedential decision under which the alien clearly loses under that argument because they don't need to tie it to a federally controlled substance- You think the board could have decided this case by just saying, see Salviejo, whatever it is? I think they'd be better and better off, Your Honor, citing their precedential decision, Martinez-Espinoza. No, no, I'm saying, if they did not write any opinion, but merely said, see X, that that's enough for the board to do to discuss an issue and rely on that theory as a reason for denying a petition. All you have to do is say, see X. Well, given that it's within the context of a motion to reopen, that's untimely- No, no, the basic board decision. You're talking about the 2011 decision, Your Honor? Well, maybe- I mean, that was the motion to reopen where they had to establish prejudice in order to get equitable tolling. Well, I have to say, I'm a little confused by your argument. First of all, it appears to rely upon a BIA precedential decision that is not, in fact, cited in the disposition here. Is that correct? That's right. And what is cited, the case names start to confuse me again. The Salviejo case, you've explained it's because there was a different aspect. But in fact, when I look at the motion to reopen, it does talk specifically about what drugs are on the Federal list and so forth. So that issue is at least teed up to the BIA in the motion to reopen. We admit, Your Honor, it would have been better off if they had cited Martinez-Espinosa. So you're asking us to rely upon a case they didn't cite and disregard the case they did cite? I admit, Your Honor. I admit, Your Honor. I'm speculating that that may have been why they didn't address that issue. You're stuck with playing the hand that you're dealt. Yes. What you're saying now, Mr. Conner, seems to go against the Schanery rule that you're telling us to rely on some ground that the Board didn't actually articulate. I acknowledge that, Your Honor. We would argue on this Court's precedent that said if a remand would be futile, then the Court need not to do that. And here, the reason a remand would be futile is because under this Court's current precedent, an alien cannot sustain her burden of proof to establish eligibility for relief based on an inconclusive record of conviction. And that's what we have here. The conviction documents do not identify the controlled substance in question. That is currently this Court's current law. Now, it may be subject to revision beyond Bonn-Grant and Almanza-Serenis, but if that's the case, we would ask this Court to hold this case for that decision. How is that theory impacted by Malouie? Well, Malouie, again, assuming it applies to drug houses, we acknowledge that that would require tying the state-controlled substance to a federally controlled substance. But this issue arises regarding... In terms of burden, is it still the petitioner's burden on a motion to reopen to show what the drug involved was? Yes, Your Honor, because she's independently removable for presence without admission or parole. She conceded that charge. So the drug conviction only goes to her eligibility for cancellation or removal. And there she bears the burden to prove that she did not violate a state drug law that is not federally controlled. So she would have borne the burden to show that the actual drug involved in her case was one of these rare substances that California regulates that the federal government does not. So you're really relying upon the Anbach decision a few years ago in Young, which is now in play. Yes, Your Honor. So to that extent, if the court says it decides it needs to resolve the prejudice issue, we would ask that this case be held for an Anbach decision in Almanza-Serena. Let me ask and turn to another issue raised by the board's disposition, which the petition didn't argue. And I think the board also relied on lack of diligence, right? Yes, Your Honor. And what is, as you see it, what does the record support in terms of diligence or lack of diligence? Yes, Your Honor. Well, we would note that the current attorney, Mr. Burke, did make an appearance for petitioner at one of the master calendar hearings. And in fact, he is the attorney who authored the brief to the immigration judge regarding her eligibility for relief. So he had some familiarity with the issues in this case, having been before the immigration court. Now, petitioner's second declaration, she indicates that sometime in late 2010, she first went and visited with Mr. Burke. And at that meeting, he learned that this court had denied the first petition for review in April 2010. That decision would have been publicly available off PACER. Had he got it, he would have seen that the reason this court dismissed the first petition for review for lack of jurisdiction was a failure to exhaust the issues relating to petitioner's conviction. So if equitable tolling were to apply, we would argue that it should have ended no later than this unknown date in late 2010. So it's from that day that, say, the 90-day clock starts running? Yes, Your Honor. And the motion wasn't filed to July of 2011, which is more than six months later. We'll even give the other side a month when unfortunately, you know, opposing counsel was suffering an injury. He said he was not able to work the month in April. But we're still talking about five months, which is not within the time limit. And so therefore, the board was correct to rely on a lack of due diligence because she would have known of the problems in late 2010. Now, is it the petitioner's burden? To demonstrate due diligence? Demonstrate, no, the date on which she learned about the, you know, what a prior attorney did? It is, Your Honor. But again, we have conflicting accounts. In her first declaration, she says that her prior counsel, Mr. Potts, moved offices sometime in early 2011. And it was at that time that she was not able to get in contact with him. That contradicts her second declaration, which says she went to see Mr. Berg in 2010 because she thought there were problems. I mean, we have... You know, all of this is contrary to all the facts that the board alleges when it decided this question. They just said that what the board relied on is that the respondent does not dispute she was aware of the board's 2007 decision dismissing her appeal. Well, of course, at some point she was aware, but she wasn't aware of it as the board suggests. Well, she does admit that... Let me finish. Yes, Your Honor. Yes, Your Honor. That's the first sentence. Nor did she dispute she was aware that shortly thereafter, after 2007, former counsel filed a petition for review of the board's decision with the United States Court of Appeals. That all of that is disputed. What the board says was not disputed is disputed. Then, despite the lack of communication between herself and former counsel and the still pending response, respondent did not contact another attorney until sometime in late 2010. Though she claims she exercised due regard. But basically, what the board contends is that she was aware of the board's decision, which she wasn't, and she doesn't dispute that she was aware that shortly thereafter, former counsel filed a petition for review. Those statements are not correct. She contends that she didn't find out about it until she saw Mr. Burke in either whatever it is, late 2010 or early 2011. Yes, Your Honor. If that's what the board's decision is, the board's decision is just based on completely erroneous facts. Respectfully, Your Honor, at AR 49, which is petitioner's first declaration, she admits that her first attorney, Potts, advised her that the board had denied her appeal and that he was then going to file a petition for review in this circuit. So that does support the board's statements. She admits that Potts told her that the board had denied her appeal and he was filing a petition. Well, that's not the critical time, because as long as something's pending in this circuit, which we all know can take some time, she doesn't have reason to think that something's not being done that should be done. It seems to me the key time is her action between the point in time when she knew or should have known that she'd lost in front of this court, which we know happened in June, she apparently did not learn about it until December or January, and the time that she ultimately files the motion to reopen, which is the following August. So there's a time of seven or eight months there, which I have to say is difficult to extract from the papers, but you can ultimately extract from the papers. And the board's talking about no information in four years. Isn't there a disconnect there? Well, Your Honor, again, you know, respectfully, the government would submit that a prudent, a diligent alien would investigate why did the board deny my appeal, what issues are arising in the Ninth Circuit. And, you know, we have a four-year period where there's none of that. And so that is a permissible reason to find a lack of due diligence. I thought we have said pretty clearly you're entitled to rely on what your lawyer tells you. Well, we don't, again, we don't know what he told her because it's not laid out in her declarations. She just says that he told me the board denied my appeal and he has filed a petition for review. That's it. We don't have dates. We have no dates. Notably, in her second declaration, she admits, she says, she references the last time I contacted Mr. Potts was, and then the date's missing. We don't have the date there. So, I mean, it's her burden. It's her burden to prove due diligence. And she must provide some dates for the agency, the adjudicator to work with in order to find that she satisfied that burden. You know, I wish you were as understanding of the difficulties of many aliens who have trouble understanding the language or the rules as you do tolerance for the board when it doesn't cite the right case. Maybe we could apply a little of that attitude toward the other side occasionally. I understand that, Your Honor. I mean, again, I admit it would have been a lot easier if the board had cited matter of Martinez-Espinosa. But again, we would ask this court if it finds that the prejudice issue must be decided in order to resolve this case because the board, the court has promised the due diligence that it please hold the case for Amanda Serena because that will resolve, you know, whether or not she can satisfy the prejudice prompt. So, barring any further questions, Your Honors, the government submits. Thank you. Thank you. Mr. Burke, I think since we've had a considerable discussion on the subject you have not discussed, we ought to give you a couple of minutes for your rebuttal. Yes, please. Speaking to the issue of diligence, which I think is the issue the court is referring to, as outlined in my brief, there's a two-step analysis. One is, when should Mrs.—when should Ms. Benedita have suspected and been put on some kind of an inquiry notice that something might have gone wrong? And nobody can deny that's the first time she came and saw me and I looked and I said, something doesn't feel right here, something doesn't look right there. And when was that? That, I believe, was maybe December of 2010. 2010. Yes. Oh, it was 2010. I'm almost 100% certain it was 2010 because my correspondences with Mr. Potts, the first one that was recorded in email—and by the way, it's disclosed in the brief. Mr. Potts was a former associate of mine, our association ended in 2006, November 2006. But the inquiry notice was caused there. As of January, I believe it was 18, I have the exact date because I have the emails. As of January 18th, I still had not received anything from Mr. Potts. And as of January 28th, I received a simple letter from him, a simple email that said simply, we were denied at the board and we went to the 9th. And this is when the 9th was dismissed. Thereafter, we started trying to get the records. At that time, I didn't know how easy it is to use a local attorney service in San Francisco to get the administrative record from the court. But at that time, we started getting very insistent, we need to see the file, we need to see what happened, we need to know what was filed, what wasn't filed. It was when we ascertained that there was no brief filed by the Potts office, which unfortunately was about the same time I put this hole in my head over here, that we knew conclusively, hey, there was something in effective assistance of counsel here. And I had always been, and as counsel pointed out, I had made the argument myself back before 2006. There's something wrong with holding this conviction to be a crime relating to a controlled substance. And I do think that it is notable that the board didn't just say, this is done because here's this case. The board said, we make these findings and we draw this conclusion using that case as a case as part of a longer analysis. But thereafter, the motion to reopen was filed in a reasonable period of time. And as to what's a reasonable period of time, obviously, I did it. I think it took me a reasonable period of time after I was able to get past that. We're looking at maybe eight months. I mean, if it was 2010 that you learned that it was done in this court, and the motion to reopen was filed in August of 2011, that's eight months. I mean, usually a 90-day deadline after. So doesn't that seem a little long? It does, and it's unusually long, even for me. There are only two explanations that I can give the court for that. The first is, Mr. Potts did not give me this file in a very timely manner. We were trying to get the file so I could see what happened, what he did. But also, I really didn't expect to lose the time that I lost exactly in that period of time. But Mr. Burke, Mr. Burke, doesn't our case law say that once you have inquiry notice, which you stated that petitioner had in December 2010, that starts the 90-day clock running. You've got to file your motion to reopen within 90 days of that notice, and you didn't do that. Well, I think, Your Honor, the— Is there some case that, you know, let you stretch that 90 days? For equitable tolling purposes, and I do think that I have cited to it, it's been my perception that we're looking at two, or rather three, and the case I'm looking at is Agavian for that. That when we're looking at specifically at the issue of due diligence, there are three things we need to look at. The first is, when should she have known, or when would she, quote, suspect this specific error? Second, whether she took reasonable steps to investigate after she suspected. I think we're click, click on that. She came to me. We ascertained when we ascertained. Now, that formed the suspicion back there. Then the second step is, now after you formed the suspicion, did you do reasonable things to turn your suspicion from a suspicion? And I'm over my time, and I apologize. Well, what are you saying? The 90-day period within which to file a motion to reopen doesn't apply at all in this case? I'm not saying that. What I am saying— What are you saying? What I am saying is, in Agavian, we talk about reasonable steps, but the clock starts— Wait a minute. I'm sorry? You're saying the 90 days should be equitably told, is that— Of course. Well, that's what Ted Tatema asked you. Okay. What are you saying about the 90-day period? He said, do you think it does not apply at all? And what your answer to that is, that it should be equitably told. Is that right? That's number one, but there's also— You get equitable tolling applies until the time when you get inquiry notice. At that point, you have 90 days. Isn't that what our case law says? Well, Agavian says— Is that what our case law says? I believe Agavian may suggest otherwise. At least I'm reading it that way, and I apologize if I'm misreading it. But the part of Agavian that I've kind of glommed onto and maybe gotten a tunnel vision for, and if I did, it happens, and I apologize. But it does say to assess when the tolling period should end. That is when petitioner definitively learns of the harm resulting from counsel's deficiency or obtains vital information bearing on the existence of the claim. And I think that's the— Not only did the board kind of deprive two-and-a-half, three years by not considering the fact that the case was pending before the circuit court, but the board didn't give us any reasonable clue, for lack of a better term, as to when it deemed the tolling period to have ended. They didn't give us the guidance to say, based on the guidance of Agavian, we have to say when should that tolling period have ended. They picked a date back in 2007, if my recollection serves, which is not a viable conclusion for them to take, assuming it's reasonable for the petitioner to have relied on counsel, who said, I've got a case pending in the Ninth Circuit, and until that happened, being put on notice. So from the board's decision, we can't glean whether they looked at when should that tolling period have ended. And if they had, I would have to make a different argument. But they didn't. They picked 2007, and I think that was a pretty clear error. What if they picked it because looking at the moving papers, it wasn't clear what the dates were? Well, at least the date on which the mandate issued from this court, that was clearly in front of the board. The fact that Mr. Potts had filed a petition for review, that it was pending in the circuit court, that he was still representing her, at least until that date in 2010, the specific date being 6-8-2010, I mean, they could have said, and therefore, the day the mandate issued is the day she should have been on notice. They even could have said the date that the decision came down, prior to the mandate, 4-4-10, they could have said. But that's not what they said. They said she was on inquiry notice the day we dismissed her appeal, and that's something that I think is just not reasonable under the circumstances. You want to take a minute on the other issue? Do you agree that we should wait for the embanked decision? I do. Your honors may be aware with prior briefs, I've been arguing against Young for some years. I would just like it noted, I just want to say it, that it is notable, had the court only sustained the EWI charge, we'd have one issue. But the court also sustained the crime relating to a controlled substances charge. So this begs both issues, both eligibility and removability, because the court really kind of made both findings. How does it, I'm confused now. I thought she conceded removability, that's not the dispute. She conceded removability. Her problem is that we're on cancellation of removal, and if Young survives, then the ball's in her court to prove eligibility. That's true. She also had been in TPS status before she even got put in the proceedings. So there would also be the, you know, procedurally, whether they're just going to, whether there's going to be the burden shifting down at the administrative level. But the point is, we never got to litigate any of this. We never got the chance to litigate any of this. It was, the hammer was down. This is a crime relating to a controlled substance. So we didn't get to argue, even, by the way, and I think most compelling, we didn't even get to argue or have an opportunity or a reason. Opportunity, we had plenty. Reason, we didn't have to run in and say, hey, look, her drug's not one of the drugs that's on the federal controlled substances schedule, because we never got there procedurally, because the judge was saying it doesn't matter what the drug was. So again, I'm not saying I didn't have opportunity. What I'm saying is, because that issue was never before the court, hey, judge, if I can show you that the drug isn't on the federal schedules, if the court still feels it's bound by Salviejo, it doesn't matter, because the rationale of Salviejo, well, it generally relates to, you know, these drug crimes. So... You agree with the government that, in this case, given the posture of the parties, that if there's an inconclusive record, it's the petitioner's burden to show what the drug is. I would conclude that under Young, that's how the judges in the court are applying it, despite my vociferous protestations, that that's not right, and that's been undermined a little bit by Moncrief and Discamp. I can't remember which one had that footnote in it that I always cite to offhand, and I apologize for that. But I've always taken the position in court that the burden shifting is wrong. And I'm happy to see that that's called back into question, because it's another one of those arrogant things where I can say, you see, I thought that was wrong. But the point is, I just never got to litigate it. We just never... The proceeding was stopped at a point where I couldn't even litigate it. It's not the only time the judge did that to me in this case, by the way. And I like... Great judge. I didn't mean that to come off wrong. Very good, awesome judge. But it's a very novel argument. It's only half flown and half circumstances about the efficacy of the expungement. And we've really got 10 minutes over. Thank you very much, Your Honor. I appreciate all the very generous extra time, and I apologize for using so much of it. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Tashima, Clifton